IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TABATHA D. TRUITT o/b/o KF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:12CV627-WKW |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Tabatha Truitt brings this action on behalf of her minor child, KF,[1] seeking judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of a decision by the Commissioner of Social Security ("Commissioner") denying her child's application for Supplemental Security Income under the Social Security Act. Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v.

---

[1] The court refers to KF as the "plaintiff" in this memorandum of opinion.

Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Factual findings that are supported by substantial evidence must be upheld by the court. See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence."). The ALJ's legal conclusions, however, are reviewed de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## BACKGROUND

Plaintiff's mother protectively filed an application for supplemental security income in June 2009, when plaintiff was five years old, alleging disability since February 1, 2009. In a disability report she completed at that time, plaintiff's mother indicated plaintiff had attention deficit hyperactivity disorder (ADHD). In a function report, she indicated that plaintiff was limited in his ability to communicate because he could not deliver simple messages such as telephone messages, and that he also had limitations in understanding and

2

using what he has learned, in his social activities and behavior, in taking care of his personal needs and safety, and in his ability to pay attention and stick to a task. (Exhibits 2E, 4E).[2] Plaintiff's application was denied at the initial administrative level, where the primary diagnosis was ADHD combined type, and the secondary diagnosis was asthma not otherwise specified (NOS). (Exhibits 1A, 2B). Plaintiff requested an administrative hearing before an administrative law judge. (Exhibit 3B, 6B, 7B). The ALJ conducted a hearing on October 21, 2010, during which he heard testimony from plaintiff's mother. (R. 37-52). The ALJ issued a decision on December 15, 2010, in which he concluded that the claimant has not been disabled as defined in the Social Security Act since June 26, 2009, the filing date of his application. (R. 15-36). On May 21, 2012, the Appeals Council considered the appeal and the additional evidence plaintiff submitted for review on appeal, and it denied plaintiff's request for review. (R. 1-6). Plaintiff commenced the present action thereafter, seeking review of the Commissioner's final decision. (Doc. # 1).

## DISCUSSION

### Child Disability

"Federal regulations set forth the process by which the SSA determines if a child is disabled and thereby eligible for disability benefits." Shinn ex rel. Shinn v. Commissioner of Social Sec., 391 F.3d 1276, 1278 (11th Cir. 2004)(citing 42 U.S.C. § 1382c(a)(3)(C)(I) and 20 C.F.R. § 416.906). "The process begins with the ALJ determining whether the child

---

[2] The court adopts the summary of the medical evidence filed by plaintiff on March 21, 2013. (Doc. # 16-2).

is 'doing substantial gainful activity,' in which case she is considered 'not disabled' and is ineligible for benefits." Id. (citing 20 C.F.R. §§ 416.924(a), (b)). "The next step is for the ALJ to consider the child's 'physical or mental impairment(s)' to determine if she has 'an impairment or combination of impairments that is severe.'" Id. (citing 42 U.S.C. §§ 416.924(a), (c)). "For an applicant with a severe impairment, the ALJ next assesses whether the impairment 'causes marked and severe functional limitations' for the child." Shinn, 391 F.3d at 1278 (citing 20 C.F.R. §§ 416.911(b), 416.924(d)). This determination is made according to objective criteria set forth in the Code of Federal Regulations (C.F.R.). As the Eleventh Circuit has explained,

> [t]he C.F.R. contains a Listing of Impairments ["the Listings", found at 20 C.F.R. § 404 app.] specifying almost every sort of medical problem ("impairment") from which a person can suffer, sorted into general categories. See id. § 416.925(a). For each impairment, the Listings discuss various limitations on a person's abilities that impairment may impose. Limitations appearing in these listings are considered "marked and severe." Id. ("The Listing of Impairments describes ... impairments for a child that cause[ ] marked and severe functional limitations.").

> A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations "meet[ ], medically equal[ ], or functionally equal[ ] the [L]istings." Id. § 416.911(b)(1); see also §§ 416.902, 416.924(a). A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations "are at least of equal medical significance to those of a listed impairment." Id. § 416.926(a)(2).

Id. at 1278-79. "Finally, even if the limitations resulting from a child's particular impairment[s] are not comparable to those specified in the Listings, the ALJ can still

conclude that those limitations are 'functionally equivalent' to those in the Listings. In making this determination, the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities. The C.F.R. specifies six major domains of life:

> (i) Acquiring and using information;
>
> (ii) Attending and completing tasks;
>
> (iii) Interacting and relating with others;
>
> (iv) Moving about and manipulating objects;
>
> (v) Caring for [one]self; and
>
> (vi) Health and physical well-being."

Shinn, 391 F.3d at 1279 (citing 20 C.F.R. § 416.926a(b)(1)). "The C.F.R. contains various 'benchmarks' that children should have achieved by certain ages in each of these life domains." Id. (citing 20 C.F.R. §§ 416.926a(g)-(l)). "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked' limitations in two of the domains [above], or an 'extreme' limitation in one domain." Id. (citing 20 C.F.R. § 416.926a(d) and § 416.925(a)).

## The ALJ's Decision

The ALJ concluded that plaintiff has not engaged in substantial gainful activity and has severe impairments including ADHD; oppositional defiant disorder (ODD); language

delay; asthma; enuresis; obsessive-compulsive disorder; conduct disorder, child onset type; overanxious disorder; social phobia; sleep disturbance; impulsive control disorder; and mood disorder.  The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of impairments in the listings. (R. 21.)  The ALJ further determined that plaintiff does not have an impairment or combination of impairments that functionally equals the listings.  He found that the plaintiff has no limitation in two domains: acquiring and using information, and moving about and manipulating objects.  (R. 28, 30.)  In the three domains of interacting and relating with others, caring for himself, and health and physical well-being, the ALJ found plaintiff to have "less than marked" limitations.  (R. 29, 31-32.)  In the domain of attending and completing tasks, the ALJ found plaintiff to have "marked limitation."  (R. 29.)

### Plaintiff's Contentions

Plaintiff argues that the Commissioner's decision is not supported by substantial evidence or proper application of the law because the ALJ erred by: (1) improperly discrediting the opinion set forth by his treating physician Dr. Meghani (Exhibit 10F), and incorrectly finding plaintiff has a less than marked limitation in interacting with others (Doc. # 11 at 6-9); (2) repeatedly relying on plaintiff's GAF score[3] (Doc. # 11 at 9-10; see Exhibit

---

[3]"G[lobal] A[ssessment of] F[unctioning] scores between 51 and 60 reflect moderate symptoms, including moderate difficulty in social, occupational, or school settings." Wind v. Barnhart, 133 F. App'x 684, 687 & n.1 (11th Cir. 2005) (citing Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)).

8F, 10F); and (3) failing to consider all applicable impairments (Doc. # 11 at 10). In addition, plaintiff argues the Appeals Council did not properly consider the records submitted to it after the hearing. (Doc. # 11 at 10.)

*Treating Physician's Opinion and Interacting and Relating with Others*

Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Shakir Meghani, plaintiff's treating physician, as inconsistent with the treatment notes. He contends that the ALJ should not have given great weight to the non-examining doctor. Plaintiff also maintains that the ALJ erred in finding plaintiff had only a "less than marked" limitation in the domain of interacting and relating with others. (Doc. # 11 at 6-9.)

Refusal to Consider November 23, 2010, Assessment

"If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight." Roth v. Astrue, 249 F. App'x. 167, 168 (11th Cir. 2007)(citing 20 C.F.R. § 404.1527(d)(2)). "If the treating physician's opinion is not entitled to controlling weight, . . . 'the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.'" Id. (citing Crawford v. Commissioner, Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004)); see also Denomme v. Commissioner, Soc. Sec., 518 F. App'x 875, 877 (11th Cir. 2013) (identifying factors to determine how much weight to give each medical opinion). "If the ALJ finds such good

cause and disregards or accords less weight to the opinion of a treating physician, he must clearly articulate his reasoning, and the failure to do so is reversible error." <u>Pritchett v. Commissioner, Social Sec.</u>, 315 F. App'x 806 (11th Cir. 2009)(citing <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1053 (11th Cir. 1986)). "When the ALJ articulates specific reasons for not giving the treating physician's opinion controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. <u>Schuhardt v. Astrue</u>, 303 F. App'x 757, 759 (11th Cir. 2008)(citing <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1212 (11th Cir. 2005)). The Eleventh Circuit has found good cause for discounting treating physicians' opinions that are "inconsistent with their own medical records." <u>Roth</u>, *supra* (citing <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir.1997)). "The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion. <u>Carson v. Commissioner of Social Sec.</u>, 373 F. App'x 986, 988 (11th Cir. 2010) (citing <u>Sryock v. Heckler</u>, 764 F.2d 834, 835 (11th Cir. 1985)).

On November 23, 2010, Dr. Meghani completed a Mental Impairment Questionnaire in which he gave plaintiff a GAF score of 50-55, and found that plaintiff had "marked" functional limitations in the activities of daily living, in maintaining social functioning, and in concentration, persistence, or pace. Dr. Meghani also found that plaintiff had four or more periods of decompensation within the last twelve months, each of at least two weeks duration; Dr. Meghani anticipated that plaintiff's impairments would cause him to miss four or more days of school per month. Dr. Meghani denied that plaintiff was a malingerer, and

determined that plaintiff's impairments had lasted or could be expected to last for twelve months.[4]  (Exhibit 10F, R. 339-42.)  The assessment does not include supporting medical evidence or notations referring to any decompensation.

The ALJ gave "no weight" to Dr. Meghani's assessment, explaining:

> The administrative Law Judge assigned no weight to the opinion of Dr. Meghani in this assessment, as it is conclusory and inconsistent with the office notes, which never referred to any period of decompensation lasting at least two weeks and was inconsistent with the daily observations in Exhibit 1D [Dothan City School records] and inconsistent with Ms. Tabatha Truitt's testimony.  He gave no examples of the bases for his extraordinary ratings.  He identified no hospitalizations, which, of course, would be expected in light of his belief regarding the claimant's unidentified decompensation episodes.

(R. 26.)  In the paragraphs preceding his refusal to give weight to Dr. Meghani's assessment, the ALJ identifies the treatment records, evaluations, mother's testimony, and other opinions that were inconsistent with Dr. Meghani's assessment. Those materials are as follows.

Plaintiff first visited Southeast Psychiatric Services, where Dr. Meghani worked, on August 30, 2010. Dr. Fernando Lopez conducted the initial psychiatric evaluation of plaintiff, and the ALJ described that visit:

> Dr. Lopez administered a mental status exam that revealed a normal appearance and a person who was fully oriented.  Dr. Lopez noted that the claimant's motor activity was restless and hyper; affect was labile; mood was volatile; psychosis was absent and his attention span was distracted. Dr. Lopez reported that the claimant's speech was excessive; insight/judgment was poor, but his sleep and appetite were good. The claimant denied any suicidal/homicidal ideations.  Dr. Lopez diagnosed the claimant with ADHD,

---

[4]Dr. Meghani's opinion refers to the criteria for adult mental impairments under the listings, not children.  Compare 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.00 (adult disability impairments) with 20 C.F.R. Pt. 404, Subpart P, App. 1 § 112.00 (child disability impairments).

mood disorder, and GAF score of 50-55.  The claimant was prescribed Focalin
XR 20 mg; Risperdal 0.5 mg; and Clonidine 0.1 mg, but discontinued Lexapro
(Exhibit 8F).

(R. 25-26, Exhibit 8F, R. 327-31.)  Plaintiff returned for a follow-up visit on September 29,

2010.[5]  Dr. Lopez noted at that visit that plaintiff does well in the morning with his

medications, his behavior was aggressive, alertness was dull, but he was oriented to place and

person.  Plaintiff's attention span, memory, impulse control were fair; his mood was happy;

his affect was appropriate; and his judgment/insight was average.  He was diagnosed with

ADHD, continued on his medications, and prescribed Adderall.  (R. 26, Exhibit 10F, R. 338.)

The treatment notes at Southeast Psychiatric Services before November 23, 2010, do not

describe any periods of decompensation, nor do Plaintiff's other medical records document

periods of decompensation. (Exhibits 1F, 2F, 5F, 6F, 7F, 9F.)  In addition, plaintiff's school

records identify no absences or other behavior difficulties.  (Exhibit 1E.)

Truitt testified at the hearing that plaintiff was in first grade and "is okay at school."

(R. 43.)  She further testified his medication has no side effects, but it wears off before lunch,

and when he gets out of school he starts slamming doors, yelling, and "being hateful, being

mean."  (R. 41-42.)  She testified that after school he sometimes go outside to play or plays

video games with Truitt or by himself.  She testified that plaintiff uses an inhaler for asthma

---

[5]Although the ALJ indicated it was Dr. Meghani who examined plaintiff on September 29,
2010 (R. 26), it appears from the progress notes and plaintiff's summary of medical records evidence
that it was Dr. Lopez, not Dr. Meghani, who saw plaintiff on September 29, 2010. (Exhibit 10F, R.
338; Doc. # 16-2 at 35).  To the extent the ALJ erred in making that finding of fact, it is harmless.
If Dr. Meghani first examined plaintiff on November 23, 2010, to complete the Mental Impairment
Questionnaire, this fact only bolsters the ALJ's decision not to rely on Dr. Meghani's opinion.

and takes medication to help control his urination.  Truitt described plaintiff's behavior as uncontrollable and violent.  She testified that plaintiff ruined her furniture, damaged property at home, tried to kill the dog several times, and threatened her with a butcher knife.  Plaintiff has friends at school, but they do not visit him.  He has a friend he plays with sometimes, but they mostly argue, and plaintiff is a sore loser.  Plaintiff does not get along with his sister. Truitt testified plaintiff is unable to complete tasks such as bathing or dressing himself, and he can play a video game for about five minutes.  She reported that the doctors said he might or might not grow out of his condition, though Truitt did not refer to a particular impairment. (R. 41-50.)

The ALJ relied on the opinion of physicians at Southeastern Pediatric Associates, which covers plaintiff's treatment from infancy to February 2009 (R.162-232), and the opinion of physicians at Dothan Pediatric Clinic, which covers from February 2010 to August 2010 (R. 316-26).  In May 2008, plaintiff began treatment under Dr. Nelson Handal's care at Dothan Behavioral Medicine for behavior problems.  (R. 253-56.)  On January 15, 2009, plaintiff went to Dothan Behavioral Medicine for medication management, where he was seen by Ruthanne Wilkes, CRNP.  At that visit Truitt reported, "[h]e is doing real good in school.  The teacher had no complaints.  No fighting."  Wilkes noted appropriate behavior and cooperation, normal speech, poor judgment, fair eye contact, and average intelligence based on vocabulary.  Plaintiff was diagnosed with "ADHD, combined type; obsessive-compulsive disorders; conduct disorder, childhood onset type; overanxious disorder; social

phobia; sleep disturbance, unspecified; impulse disorder, NOS; and mood disorder, NOS."
Dr. McCleod approved continuing his Ritalin, and he was also prescribed Melatonin. Truitt
reported that he she was not giving plaintiff Melatonin because it had stopped working, but
Wilkes suggested trying the Melatonin because plaintiff had been off it for two months.  (R.
237-38.)  Plaintiff continued to be seen at Dothan Behavioral Medicine nearly every month
for evaluation and medication management until July 2010, after which he went to Southeast
Psychiatric Services.  (R. 233-38, 272-314.)

The ALJ also relied on the opinion of Dr. J. Walter Jacobs, who performed a
consultative examination of plaintiff on August 18, 2009.  Truitt did not report any health
concerns to Dr. Jacobs, and Dr. Jacobs noted that plaintiff was making satisfactory academic
progress.  Truitt reported some problems with articulation and speech sound substitutions,
which raised to Dr. Jacobs the possibility of a language based learning disorder, but Dr.
Jacobs noted plaintiff's speech was essentially normal.  Dr. Jacobs said it was very difficult
to get plaintiff to answer questions, and plaintiff talked  incessantly but on topics unrelated
to those asked. Plaintiff's energy was far above normal. In the assessment of his
concentration/attention, Dr. Jacobs had great difficulty getting plaintiff to attend to the
questions and answer them.  Plaintiff could not name three fruits or vegetables, but Dr.
Jacobs suggested plaintiff might have been able to name them but was quickly off the
subject.  Dr. Jacobs gave his opinion that plaintiff's judgment and insight were impaired due
to ADHD, but there was no evidence of psychotic process or serious intellectual disturbance.

Truitt told Dr. Jacobs that plaintiff could perform all adaptive skills expected of a five-year-old, but he required supervision in most everything and failed to complete tasks because he was too busy with his interest of the moment.  Dr. Jacobs diagnosed plaintiff with ADHD, combined type, and ODD.  He stated he did not expect significant change in plaintiff in the next six to twelve months.  (R. 257-60.)

The ALJ gave significant weight to the opinion of Dr. Peter S. Bertucci and Dr. M. Hope Jackson, who did not examine plaintiff but who completed a Childhood Disability Form for plaintiff.  On August 28, 2009, they noted that plaintiff had severe impairments of asthma NOS, allergic rhinitis, gastroesophageal reflux, upper respiratory infection, ADHD combined type, and ODD. They made the same findings regarding the functional equivalence domains as did the ALJ, and the ALJ gave the opinion "[s]ignificant weight . . . as it is consistent with the vast majority of the treatment notes." (R. 24, 261-66.)

The ALJ relied on the opinion of the speech therapists who treated plaintiff. In November 2009, plaintiff was evaluated at Advance Therapy & Performance Center for speech and language deficit.  He was found to have a mild total language deficit, and was recommended to have therapy twice weekly for the next month.  (R. 269-71.)  From January 2010 to April 2010, plaintiff met with the speech therapist twice weekly, during which time the therapist described plaintiff as "cooperative," "continues to smile and laugh frequently," "has a good rapport with SLP," "converses easily," and "cheerful in demeanor." (R. 334-37.) The therapist reported that plaintiff was cooperative in May 2010, but, on May 20, 2010, he

13

had one episode of extreme anger, which adversely affected progress on that date.  (R. 333.)
Truitt requested that plaintiff's therapy be reduced to once a week during the summer, and
the therapist noted that plaintiff was declining in his short-term goals.  (R. 333.)  Plaintiff
attended speech therapy only once in June 2010, and the therapist noted no improvement due
to lack of attendance.  (R. 332.)  The ALJ found that the non-compliance with plaintiff's
treatment "reflects negatively on the allegations of his mother, suggesting that he may not
have actually needed the therapy."  (R. 26.)

On May 18, 2010, Dr. Handal at Dothan Behavioral Medicine evaluated plaintiff for
anger problems. Truitt reported that plaintiff was slamming doors, throwing things, and
aggressive with the other kids at school.  Handal prescribed plaintiff Ritalin and Focalin for
his ADHD, Melatonin for his sleep disorder, and Risperdal for his mood disorder.  (R. 282-
83). Plaintiff's last visit at Dothan Behavioral Medicine was on July 21, 2010, with
complaints of afternoon hyperactivity.  Truitt denied any adverse reactions or side effects of
the medication and said the Focalin was effective, but she said the Ritalin plaintiff took in
the afternoon was ineffective and plaintiff was not doing what the therapist recommended.
Plaintiff's medications were altered.  (R. 273.)

On August 30, 2010, plaintiff was seen by Dr. Michelle Freeman at Dothan Pediatric
Clinic for ADD/ADHD follow up.  Dr. Freeman noted that Truitt and teachers said plaintiff
was doing well on his medication, with no side effects.  Truitt reported that plaintiff often
has difficulty sustaining attention in tasks or play activity, and she wanted a second opinion

14

after her visit with Dr. Handal.   Plaintiff was diagnosed with ODD and ADHD with hyperactivity.  He was prescribed Focalin and advised to return as needed. (R. 325-26.) That same day, plaintiff was evaluated by Dr. Lopez and began his treatment at Southeast Psychiatric Services. (R. 327.)

The record contains substantial evidentiary support for the ALJ's conclusion that the marked and extreme limitations indicated in Dr. Meghani's assessment are not consistent with the office notes and observations recorded in plaintiff's medical treatment records, the daily observations noted in plaintiff's school records, and his mother's testimony.  The court concludes that plaintiff's argument that the ALJ erred in disregarding Dr. Meghani's assessment is without merit.

Opinion of Non-Examining Doctors

Plaintiff contends that the ALJ should not have relied on the opinions of doctors who did not examine plaintiff and did not have access to records submitted after their assessment. (Doc. # 11, at 7.)  However, contrary to plaintiff's suggestion, an ALJ may assign substantial weight to the opinion of a non-examining doctor where, as here, the ALJ clearly articulated his reason for doing so, and he considered the plaintiff's medical condition as a whole. Social Security Ruling 96-6p provides that "[f]indings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council

levels of administrative review." The Ruling indicates that the medical opinions of such consultants must be considered, and states that "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  The opinions of non-examining medical sources, "when contrary to those of examining [sources], are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987).  However, the ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources.  Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991).  Additionally, where the ALJ has properly discounted the opinion of an examining source, the ALJ may rely on the contrary opinions of non-examining sources.  See Milner v. Barnhart, 275 F. App'x 947, 948 (11th Cir. 2008) (where ALJ properly rejected conflicting opinion of one-time examining physician, ALJ did not err by giving substantial weight to the opinions of non-examining psychologists); Wainwright v. Commissioner of Social Security Administration, 2007 WL 708971, at *2 (11th Cir. 2007) (unpublished opinion) (where ALJ properly rejected examining psychologist's opinion, the ALJ was entitled to rely on the opinions of non-examining state agency psychologists).  In this case, because the ALJ properly rejected Dr. Meghani's opinion, and the opinions of Dr.  Bertucci and Dr. Jackson were consistent with the treatment notes and opinions of the other treating doctors, the ALJ did not err by relying on the opinions of the non-examining doctors.

16

<u>Interacting and Relating with Others</u>

Plaintiff argues that the ALJ should have found he has marked limitation in the domain of interacting and relating with others.  With regard to this domain, the ALJ stated:

> Ms. Truitt reported in the Function Report in Exhibit 2E that the claimant's impairments do affect his behavior with other people such as sharing his toys, taking turns and playing board games.  The Dothan City Schools Head Start Program for the 2008/2009 academy school year records documented that the claimant earned good grades in school and documented no academic problems.  The school records were absent of any behavioral problems in Exhibit 1E.  The claimant was noted to have language problems, but it was only mild as noted in Exhibit 5F.  The Speech-Language Pathology Progress notes in Exhibit 9F documented non-compliance with his therapy sessions. This conclusion is supported by Dr. Peter S. Bertucci and Dr. M. Hope Jackson's findings and opinion of less than marked limitations in this domain in Exhibit 4F.

(R. 29-30.)[6]  Plaintiff argues that Dr. Meghani's opinion, as well as those of Dr. Lopez, Dr. Handal, and the consultative examiner, Dr. Jacobs, all support a finding of "marked" limitation in the domain of interacting with others. He argues that the examining psychologists and psychiatrists "were all convinced that the child had ADHD which would meet a listing with marked impulsivity and inattention." (Doc. #11 at 8.)  He faults the ALJ for declining to consider the opinion of Dr. Jacobs, and for relying on non-examining doctors or doctors who did not specialize in treatment of psychiatric disorders, such as pediatricians, teachers, and speech-language therapists.  Plaintiff further argues that the ALJ mischaracterized the findings of the therapists but does not explain how the ALJ

---

[6]The Commissioner's regulations set forth examples of functions that children should be able to perform, depending on their ages, as to each of the domains. See, e.g., 20 C.F.R. 416.926a(i).  The ALJ considered these examples in his analysis of plaintiff's functioning.

mischaracterized their findings.  (Doc. # 11 at 8.)

The court first observes that no examining psychologist or psychiatrist gave an opinion that plaintiff specifically met the listing for ADHD.[7] An ALJ may consider nonmedical evidence in determining whether the limitations stemming from a child's impairment are functionally equivalent to the limitations specified in the listings. Shinn, 391 F.3d at 1284.  Considering the record as a whole, substantial evidence supports the ALJ's finding that plaintiff has less than marked limitation in the domain of interacting and relating with others.

Truitt described incidents during which plaintiff did not get along with others.  In December 2009, May 2010, and June 2010, plaintiff was seen at Dothan Behavioral Medicine for aggression and academic problems.  (R. 279, 282, 295, 298, 301.)  For the most part, however, plaintiff's behavior at Dothan Behavioral Medicine was described as appropriate or cooperative, and his difficulties were addressed within the context of his hyperverbal speech, inability to focus on tasks, and poor judgment.  (R. 233-38, 273, 276, 279, 282, 284, 286, 289, 292, 303, 305, 307, 309, 311, 313.)  Dr. Jacobs emphasized plaintiff's problems in the domain of attending and completing tasks, noting that plaintiff's speech was essentially normal, but his energy was "far above normal," he was "obviously distractible," and it was hard to get him to attend to questions and answer them. (R. 257-59.)

---

[7]The ADHD listing requires a showing of (1) marked inattention; (2) marked impulsiveness; and (3) marked hyperactivity, coupled with at least two marked impairments in age-appropriate functions of cognitive/communication, social functioning, personal functioning, or concentration, persistence, and pace. 20 C.F.R. Pt. 404, Subpart P, App. 1, § 112.11.

18

The written opinion by the ALJ describes the evidence considered for each domain, his findings, and the fact that the ALJ considered all of the evidence. In making his assessment, the ALJ reasonably relied on the opinion of the non-examining state agency experts.  The ALJ said "[i]n determining the limitation in each of the six functional domains, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929, SSRs 96-4p and 96-7p." (R. 22.) A comprehensive review of the evidence presented to and considered by the ALJ coupled with the individual analysis as to each of the six domains and the record as a whole was sufficient evidence for the ALJ to conclude that plaintiff has a less than marked limitation in interacting and relating with others. Cf. Newsome ex rel. Bell v. Barnhart, 444 F. Supp.2d 1195, 1198 n.2 (M. D. Ala. 2006) (citing Ogranaja v. Comm'r of Soc. Sec., 186 F. App'x 848, 851 (11th Cir. 2006) ("We do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole."). The Court finds no legal error in the ALJ's finding that plaintiff has less than marked limitation in this domain, and substantial evidence supports these findings.

*GAF Score*

Plaintiff argues that the ALJ relied too heavily on plaintiff's GAF score, which indicates general well-being and not specific areas which the court must consider.  (Doc. #

11 at 9-10.)  GAF scores by themselves do not determine a disability; instead, they are a piece of evidence to consider as part of the record on the whole. Nichols v. Astrue, 2012 WL 3638827, at *9 (N.D. Fla. Aug. 7, 2012) ("GAF scores are not a direct indication of an individual's disability status, but rather are only recognized as a tool to assist the ALJ in forming a decision."); see also Petree v. Astrue, 260 F. App'x. 33, 42 (10th Cir. 2007).  GAF scores have no "direct correlation to the severity requirements in our mental disorders listings." See 65 Fed. Reg. 50746, 50764-65, 2000 WL 1173632 (Aug. 21, 2000).

As part of the opinion evidence on which he relied, the ALJ included Dr. Lopez's finding that plaintiff had a GAF score of 50-55, indicating only moderate symptoms.  (R. 27, 331); see also Wind, 133 F. App'x at 687 n.1.  The ALJ mentioned this finding again, along with significant other evidence, in determining that plaintiff has less than marked limitation in health and physical well-being.  (R. 32.)  The ruling demonstrates that the ALJ treated the GAF score as just one consideration in the context of the entire record in deciding whether plaintiff had an impairment that functionally equaled the listings. Plaintiff's argument that the ALJ unreasonably relied on the GAF score is without merit.

### Consider All Applicable Impairments

Plaintiff relies on Ellington v. Astrue, 2:07cv789-CSC, 2008 WL 1805435 (M.D. Ala. Apr. 18, 2008), to argue the ALJ failed to consider all applicable impairments.  Plaintiff points out that, along with his ADHD diagnosis, he also was diagnosed with ODD and anxiety, "but the ALJ did not fully consider these listings either separately or in conjunction

with ADHD," and he "gave only cursory review of these listings, including ADHD." (Doc. # 11 at 10.)

The court disagrees. In Ellington, without referring to any particular listing, the ALJ summarily stated in step three of the evaluation process that the claimant did not have an impairment or combination of impairments that met or medically equaled the listings, without identifying or discussing any particular listing. Ellington, 2008 WL 1805435, at *8. In contrast, the ALJ in plaintiff's case expressly stated that plaintiff's "attention deficit/hyperactivity disorder; oppositional defiant disorder; language delay; asthma; enuresis; obsessive-compulsive disorder; conduct disorder, child onset type; overanxious disorder; social phobia; sleep disturbance; impulsive control disorder; and mood disorder impairments were analyzed individually and in combination. No listing was met or equaled." (R. 21.) He followed his statement with an explanation that plaintiff's impairments have generally responded well to treatment, his asthma was better when he complied with his medication, his mother agreed that his behavior was better when he complies with his medication, his language delay was only mild, and no treating or examining physician set forth medical findings that were equivalent in severity to the criteria for any listed impairments. (R. 21.) With regard to the question whether an impairment or combination of them functionally equal the listings, the ALJ stated, "[t]he undersigned has assessed the interactive and cumulative effects of all of the claimant's medically determinable impairment(s), including any impairments that are not 'severe' in all of the affected

21

domains." (R. 22.) Throughout his examination of the testimony, records, medical evidence, and discussion of functional domains, the ALJ thoroughly discussed all of plaintiff's various impairments.  (R. 22-32.)  The ALJ's analysis was sufficient. See Jones ex rel. T.J.J. v. Astrue, 1:10-CV-328-TFM, 2011 WL 1706465, at *7 (M.D. Ala. May 5, 2011) ("Perhaps, if individual aspects of the findings of the ALJ were taken in isolation and to the complete exclusion as to the balance of the opinion, one could argue that the ALJ failed to comply with the requirements to articulate her findings; however, the Court finds that the ALJ's decisions were 'well-articulated' as required.") (discussing Williams v. Barnhart, 186 F. Supp. 2d 1192, 1200 (M.D. Ala. 2002)).

### Records Submitted After the Hearing

Finally, plaintiff argues that the Appeals Council did not properly consider a November 22, 2011, psychological evaluation by Dr. Kimberly Jones, Psy.D.; an Individualized Education Program (IEP) from Dothan City Schools dated March 2, 2012; and updated medical records from 2011 and 2012.  Plaintiff maintains that it is not clear how the Appeals Council considered the records, and that the adjudicator must consider school records[8].  (Doc. # 11 at 10; R. 346-88).  The Appeals Council stated, "we considered the

---

[8]Plaintiff does not point out any particular evidence submitted to the Appeals Council that would have rendered the ALJ's decision erroneous, and the authority he cites regarding school records is Turner ex rel. Turner v. Barnhart, 377 F. Supp. 2d 1165 (M.D. Ala. 2005).  In Turner, the ALJ failed to mention 103 pages of school records, including standardized test scores, questionnaires generated by the Social Security Administration, and detailed notes from teachers, nurses, and staff regarding the claimant's behavior.  Id. at 1168.  The court remanded for the ALJ to consider the records along with an additional 50 pages of school records submitted to the Appeals Council. Id. at 1169.

reasons you disagree with the decision and the additional evidence listed on the enclosed Order of the Appeals Council.  We found that this information does not provide a basis for changing the Administrative Law Judge's decision."  (R. 1-2.)

This court recently considered a similar challenge to the Appeals Council's brief denial of review in Edwards v. Colvin, 2:11CV883-SRW, 2013 WL 6772975 (M.D. Ala. Dec. 20, 2013). It concluded that the Appeals Council could not be reversed simply because it did not elaborate how it considered the new evidence when it denied review.  Id. at *3-4 (citations omitted).  Rather, the relevant question is "whether, considering the new evidence along with the other evidence of record, the decision of the ALJ is supported by substantial evidence." Id. at * 2, 4 (relying on Ingram v. Commissioner of Social Security, 496 F.3d 1253, 1262 (11th Cir. 2007) ("[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous.")).

The new evidence in plaintiff's case does not deprive the ALJ's decision of substantial evidentiary support and does not render the denial of benefits erroneous. See Ingram, 496 F.3d at 1262.  Dr. Jones' November 22, 2011, assessment indicated that plaintiff had conduct disorder, childhood onset type; ADHD, combined type; and borderline intellectual functioning.[9]  She recommended changes to his medication, an IEP, and anger management

---

[9]Plaintiff does not suggest that, based on the evidence before the Appeals Council, plaintiff has a marked limitation in any domain other than in interacting and relating with others and attending and completing tasks. The court has considered whether the additional evidence demonstrates a marked or greater limitation in any functional domain other than attending and completing tasks, and

therapy.  (R. 348.)  Plaintiff's mother reported that he does not get along well with other children.  (R. 347).  However, when Dr. Jones inquired about what plaintiff's teachers would say about him, plaintiff's mother "reported they would say, 'okay, no behavioral problems in class.'"  (Id.).   Plaintiff's IEP, designed to ensure that plaintiff remains in the general education classroom at least eighty percent of the day, describes substantially the same functioning and impairments that the ALJ addressed.  (R. 362-69.)   After considering the new evidence, the court concludes it does not render the ALJ's decision erroneous; therefore, the Appeals Council did not err in denying plaintiff's request for review of the ALJ's decision.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the ALJ's decision that plaintiff was not disabled for purposes of his Title XVI claims is supported by substantial evidence and the proper application of the law, and that the Appeals Council did not err in denying review on the basis of the new evidence it considered.  Accordingly, it is the

---

concludes that it does not.  While plaintiff's IQ scores might otherwise suggest a greater limitation, Dr. Jones – the psychologist who evaluated plaintiff more than a year after the ALJ's decision – did not diagnose mild mental retardation in reliance on those scores but, instead, concluded that his "performance on today's psychological evaluation suggests borderline intellectual functioning." (R. 348). She observed that plaintiff "was unable to tolerate continuous performance testing" (id.), which suggests the reason for her diagnosis. Cf. T.R.C. ex rel. v. Commissioner, Soc. Sec., 2014 WL 292286, at *1-2 (11th Cir. Jan. 28, 2014)(ALJ did not err in giving little weight to psychometrist's opinion that was internally inconsistent and also in conflict with opinion of medical examiner who said claimant's "frustration and marginal test-taking efforts undermined the test results"). After considering the whole record, including the additional evidence presented to the Appeals Council, the court cannot conclude that it fails to provide substantial evidentiary support for the ALJ's conclusion that plaintiff's condition does not meet or functionally equal a listing.

RECOMMENDATION of the Magistrate that the decision of the Commissioner be AFFIRMED.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action.  The parties are DIRECTED to file any objections to this Recommendation on or before March 14, 2014.  Any objections filed must identify specifically the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 28th day of February, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE